FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 12, 2021

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GLORIA R.,[1] <br>                 Plaintiff, <br><br>      vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>                 Defendant. | No. 4:20-cv-05101-MKD <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 17, 19 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 17, 19. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

motion, ECF No. 17, and denies Defendant's motion, ECF No. 19.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education, and

past work experience. *Id.* If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §

404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis

concludes with a finding that the claimant is disabled and is therefore entitled to

benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On March 14, 2017, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of October 1, 2015.[2] Tr. 15, 87, 185-93. The application was denied initially and on reconsideration. Tr. 111-17, 119-25. Plaintiff appeared before an administrative law judge (ALJ) on April 30, 2019. Tr. 32-66. On June 17, 2019, the ALJ denied Plaintiff's claim. Tr. 12-31.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2017, did not

_____

[2] Plaintiff previously applied for disability insurance benefits on March 15, 2013; an ALJ issued an unfavorable decision on June 15, 2015. Tr. 16, 67-80. The Appeals Council declined to review the decision and Plaintiff did not appeal the decision further. Tr. 81-86. The ALJ in the present case found Plaintiff rebutted the presumption of continuing non-disability. Tr. 16.

ORDER - 6

engaged in substantial gainful activity from October 1, 2015 through the date last insured. Tr. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; bilateral osteoarthritis of the knees; and kyphosis of the cervical and thoracic spine. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 20. The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff could] lift up to twenty pounds occasionally; she [could] lift or carry up to ten pounds frequently; she [could] stand and walk for at least six hours in an eight-hour workday; she [could] sit for at least six hours in an eight-hour workday with normal breaks; she [could] frequently climb ramps or stairs; she [could] frequently balance, stoop, kneel, crouch, and crawl; she [could] occasionally climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to hazardous machinery and even moderate exposure to unprotected heights.

*Id.*

At step four, the ALJ found Plaintiff was unable to perform any of her past relevant work. Tr. 24. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as office helper, routing clerk, and storage rental clerk. Tr. 25. Therefore, the ALJ concluded Plaintiff was not under a disability, as

defined in the Social Security Act, from the alleged onset date of October 1, 2015, through the date last insured. *Id.*

On April 23, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the opinion evidence;

2. Whether the ALJ conducted a proper step-two analysis; and

3. Whether the ALJ properly evaluated Plaintiff's symptom claims. ECF No. 17 at 2.

## DISCUSSION

### A. Conceded Error

Plaintiff contends the ALJ conducted an improper step-two analysis, improperly rejected Plaintiffs symptom claims, and improperly weighed the opinions of Kirsten Nestler, M.D.; William Drenguis, M.D.; Stephanie Wheeler, M.D.; and Noe Lopez. ECF No. 17 at 4-19. Defendant concedes the ALJ committed reversible error in giving great weight to the opinion of Dr. Nestler but

ORDER - 8

failing to account for Plaintiff's limited reading, writing, and math abilities at step five.  ECF No. 19 at 2, 5-6.  Defendant does not concede to the remaining issues raised by Plaintiff, and argues the case should be remanded for further proceedings rather than immediate benefits.  *Id.* at 6-7.  Accordingly, the Court has addressed the contested issues.

## B. Opinion Evidence

Plaintiff contends the ALJ erred in her consideration of the opinions of Kirsten Nestler, M.D.; William Drenguis, M.D.; Stephanie Wheeler, M.D.; and Noe Lopez.  ECF No. 17 at 12-19.

### 1. Medical Opinion Evidence

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

a. Dr. Nestler

On August 20, 2017, Dr. Nestler conducted a psychological evaluation and rendered an opinion on Plaintiff's functioning. Tr. 426-30. Dr. Nestler diagnosed Plaintiff with unspecified depressive disorder. Tr. 429. Dr. Nestler opined Plaintiff is unable to manage funds in her own best interest due to her very limited

reading, writing, and math skills, but opined Plaintiff does not have any other limitations. Tr. 429-30. The ALJ gave Dr. Nestler's opinion great weight. Tr. 23. As Defendant has conceded the ALJ erred in failing to account for Plaintiff's limitations in reading, writing, and math, ECF No. 19 at 5, the Court finds the ALJ harmfully erred in failing to account for Dr. Nestler's opinion in the RFC and not providing specific and legitimate reasons, supported by substantial evidence, to reject the opinion. On remand, the ALJ is instructed to reconsider Dr. Nestler's opinion, and to perform the five-step process anew, taking into consideration the impact of Plaintiff's limitations in reading, writing, and math. The ALJ is further instructed to take new testimony from Plaintiff regarding her reading, writing, and math skills, and to take new vocational expert testimony.

b. Dr. Drenguis

On August 7, 2017, Dr. Drenguis performed a physical examination and rendered an opinion on Plaintiff's functioning. Tr. 418-23. Dr. Drenguis diagnosed Plaintiff with cervical pain, low back pain, bilateral degenerative joint disease of the knees, and history of bilateral ankle pain. Tr. 422. Dr. Drenguis opined Plaintiff's maximum standing/walking capacity is "at least two hours"; her maximum sitting capacity is "at least four hours"; she is limited to lifting/carrying 20 pounds occasionally and 10 pounds frequently; she can frequently balance, reach, handle, finger, and feel; and occasionally climbing, stooping, kneeling,

crouching, and crawling.  Tr. 422-23.  The ALJ gave some weight to Dr. Drenguis'

opinion.  Tr. 23.  As Dr. Drenguis' opinion was contradicted by the opinion of Dr.

Morse, Tr. 43, the ALJ was required to give specific and legitimate reasons,

supposed by substantial evidence, to reject Dr. Drenguis' opinion.  *See Bayliss*,

427 F.3d at 1216.

      First, the ALJ found Dr. Drenguis' opinion was not entirely consistent with

his own examination.  Tr. 23.  A medical opinion may be rejected if it is

unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of

Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278

F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.

2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Furthermore, a

physician's opinion may be rejected if it is unsupported by the physician's

treatment notes.  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).

      The ALJ noted Dr. Drenguis' examination included several negative

findings, largely subjective reports of tenderness, and a small deficit in grip

strength that was not linked to any specific medically determinable impairment.

Tr. 23.  On examination, Plaintiff had a shuffling gait, limited range of motion in

the neck, back, and knees, and tenderness, and she had decreased grip strength.  Tr.

420-21.  Plaintiff had normal ability to make a fist and manipulate objects, she had

a normal station, was able to walk on her toes and hop, she had a negative straight

leg test, normal strength in all areas except her grip, and had normal sensation. *Id.*

Dr. Drenguis noted Plaintiff's cervical and lumbar pain and tenderness was

consistent with degenerative changes of the spine. Tr. 422. However, Plaintiff's

imaging was normal without any indication of significant degenerative changes.

Tr. 410, 422, 424. This was a specific and legitimate reason, supported by

substantial evidence, to reject Dr. Drenguis' opinion.

Second, the ALJ gave more weight to the opinion of Dr. Morse than she

gave to Dr. Drenguis' opinion. Tr. 23. An ALJ may choose to give more weight

to an opinion that is more consistent with the evidence in the record. 20 C.F.R. §

404.1527(c)(4) ("[T]he more consistent a medical opinion is with the record as a

whole, the more weight we will give to that medical opinion."); *Nguyen v. Chater*,

100 F.3d 1462, 1464 (9th Cir. 1996). Relevant factors when evaluating a medical

opinion include the amount of relevant evidence that supports the opinion, the

quality of the explanation provided in the opinion, and the consistency of the

medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028,

1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. §

404.1527(c)(6) (assessing the extent to which a medical source is "familiar with

the other information in [the claimant's] case record"). Dr. Morse, a testifying

medical expert, reviewed Dr. Drenguis' opinion and examination and opined that

Dr. Drenguis' conclusions were not supported by his own examination. Tr. 23, 44.

Dr. Morse noted Plaintiff did not have evidence of radiculopathy, and her neurological examination was normal. *Id.* Dr. Morse testified that Dr. Drenguis' opinion was out of proportion with the findings. Tr. 44. This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Drenguis' opinion.

       c. Dr. Wheeler

On September 16, 2018, Dr. Wheeler, Plaintiff's primary care physician, rendered an opinion on Plaintiff's functioning. Tr. 432-34. Dr. Wheeler diagnosed Plaintiff with thoracic kyphosis, hypertension, low back pain, and knee pain. Tr. 432. Dr. Wheeler opined Plaintiff can perform light work, but would need to lie down during the day for 15 minutes at a time due to pain, and she would miss four or more days per month. Tr. 432-33. Dr. Wheeler also opined on August 8, 2018 that Plaintiff's spine condition would not worsen if she returned to work, none of Plaintiff's conditions are considered disabling as she has many things she can due despite her conditions, and opined Plaintiff was not a candidate for disability because she does not have a single qualifying diagnosis that renders her disabled. Tr. 449. The ALJ gave Dr. Wheeler's opinions little weight. Tr. 23. As Dr. Wheeler's opinions were contradicted by the opinion of Dr. Morse, Tr. 43, the ALJ was required to give specific and legitimate reasons, supposed by substantial evidence, to reject Dr. Wheeler's opinions. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Wheeler's opinions were inconsistent with one another. Tr. 23. The ALJ may properly reject a medical opinion that gives no explanation for deviating from the provider's prior medical opinion. *See Morgan v. Sullivan*, 945 F.2d 1079, 1081 (9th Cir. 1991). The ALJ noted Dr. Wheeler's opinions were rendered only a little over a month apart, and there was no change in Plaintiff's conditions or treatment between the two opinions. Tr. 23. Dr. Wheeler does not offer an explanation for the differing opinions. Plaintiff argues the opinions are not inconsistent because Dr. Wheeler consistently stated Plaintiff's back impairment was stable and would not worsen with work, and Dr. Wheeler's August 2018 opinion is not inconsistent with a disabling opinion because Dr. Wheeler is not a vocational expert and cannot be expected to know absenteeism is considered a disabling limitation. ECF No. 17 at 16-17. However, in August 2018, Dr. Wheeler noted Plaintiff's conditions are not disabling, they would not worsen with work, Plaintiff should be encouraged to work, and stated there are many things Plaintiff can do despite her conditions. Tr. 449. The September 2018 opinion is also internally inconsistent; Dr. Wheeler opined Plaintiff can perform light work on a sustained, competitive basis, yet also opined Plaintiff would need to lie down during the day and would miss four or more days per month. Tr. 433. The ALJ reasonably found Dr. Wheeler's opinions were inconsistent. This was a

specific and legitimate reason, supported by substantial evidence, to reject the opinion.

Second, the ALJ found Dr. Wheeler's September 2018 opinion was inconsistent with the longitudinal records. Tr. 23-24. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. The ALJ found Dr. Wheeler's opinion was inconsistent with the objective evidence in the medical records, including the unremarkable findings on imaging. Tr. 23-24. Plaintiff's bilateral knee imaging was normal, as was the imaging of her cervical spine. Tr. 21 (citing Tr. 410-11, 575). Imaging of Plaintiff's lumbar spine did not reveal any significant degenerative changes. Tr. 21 (citing Tr. 422). Plaintiff's knee examination was normal, Tr. 21 (citing Tr. 405), and while Dr. Drenguis' examination contained some abnormalities, it also contained normal findings, including negative straight leg testing, and normal strength except slightly decreased grip strength. Tr. 21 (citing Tr. 421-22). Plaintiff argues the evidence is consistent with Dr. Wheeler's opinion, as she tried physical therapy without improvement in her symptoms, and Dr. Wheeler cited to Plaintiff's prior imaging and diagnoses to support her opinion. ECF No. 17 at 17. However, Dr. Wheeler cited to Plaintiff's normal imaging to support her opinion. Tr. 432. Dr. Wheeler also noted Plaintiff's impairments were being treated with Tylenol and physical therapy, *id.;* such conservative longitudinal treatment is not

consistent with a disabling opinion, *see* Tr. 23. This was a specific and legitimate

reason, supported by substantial evidence, to reject Dr. Wheeler's opinion.

### 2. Lay Opinion Evidence

An ALJ must consider the statement of lay witnesses in determining whether

a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053

(9th Cir. 2006). Lay witness evidence cannot establish the existence of medically

determinable impairments, but lay witness evidence is "competent evidence" as to

"how an impairment affects [a claimant's] ability to work." *Id*.; 20 C.F.R. §

404.1513; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)

("[F]riends and family members in a position to observe a claimant's symptoms

and daily activities are competent to testify as to her condition."). If a lay witness

statement is rejected, the ALJ "'must give reasons that are germane to each

witness.'" *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 919).

On April 18, 2019, Mr. Lopez wrote a letter regarding Plaintiff's

functioning. Tr. 290-91. Mr. Lopez wrote that Plaintiff has pain throughout her

body, she has difficulty picking items up as it causes her to urinate, she angers

easily, and has impaired sleep. Tr. 290. The ALJ did not address Mr. Lopez's

statement. As the case is being remanded for other reasons discussed herein, the

ALJ is also instructed to consider Mr. Lopez's statement.

**C. Step Two**

Plaintiff contends the ALJ erred in finding Plaintiff's hypertension is non-severe, and in failing to consider Plaintiff's limited reading, writing, and math skills. ECF No. 17 at 6-8. At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). To establish a severe impairment, the claimant must first demonstrate the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 404.1521.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." SSR 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a

routine work setting.  20 C.F.R. § 404.1522(a); SSR 85-28.[3]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

The ALJ found several of Plaintiff's impairments non-severe, including hypertension.  Tr. 18.  The ALJ noted Plaintiff's hypertension had been well controlled throughout the relevant period.  *Id.*  Plaintiff argues the ALJ erred because her hypertension caused symptoms despite treatment, including dizziness, headaches, chest pain, and shortness of breath.  ECF No. 17 at 4-5.  Plaintiff also argues the ALJ erred in failing to consider that her hypertension medication caused side effects including sedation/drowsiness and dizziness/lightheadedness.  *Id.* Plaintiff contends the ALJ harmfully erred by failing to account for limitations

---

[3] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

caused by Plaintiff's hypertension, as the ALJ should have limited Plaintiff to sedentary work and/or included a limitation to account for Plaintiff's need to lay down. *Id.* at 5-6. The medical records indicate on multiple occasions that Plaintiff's hypertension was stable and well-controlled. Tr. 335, 338, 466. Plaintiff reported at an appointment that her lightheadedness resolved with a decreased dosage of her medication. Tr. 354. Plaintiff cites to her self-report, and does not cite to objective evidence of her hypertension causing limitations that were not accounted for in the RFC. ECF No. 17 at 4-6. As such, Plaintiff has not demonstrated the ALJ harmfully erred at step two by finding hypertension is a non-severe impairment.

Plaintiff also argues the ALJ erred at step two by failing to account for Plaintiff's limited reading, writing, and math. *Id.* at 6-8. Defendant has conceded the ALJ erred in failing to account for the limitations and the ALJ is instructed to consider Plaintiff's reading, writing, and math limitations on remand, as discussed *supra.*

### D. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 17 at 8-12. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2.

ORDER - 20

"First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester*, 81 F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the evidence.  Tr. 22.

### 1. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the

objective medical evidence.  Tr. 21-22.  An ALJ may not discredit a claimant's

symptom testimony and deny benefits solely because the degree of the symptoms

alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ found that Plaintiff's reported physical symptoms were not as severe as she claimed. Tr. 21-22. Plaintiff's imaging of her spine, and knees were generally normal, as were her physical examinations. Tr. 22 (citing, e.g., Tr. 344, 350, 360, 366, 410-11, 575). While Dr. Drenguis found several abnormalities on examination, Plaintiff had generally normal strength. Tr. 22 (citing Tr. 421). Plaintiff has had negative neurological findings, and negative straight leg raise tests. Tr. 22. Plaintiff offers an alternative interpretation of the evidence, ECF No. 17 at 8-10, however the ALJ reasonably found Plaintiff's physical symptoms were inconsistent with the objective evidence.

The ALJ also found Plaintiff's reported mental health symptoms were not as severe as she claimed. Tr. 21. Plaintiff generally had normal mood and affect at her appointments. *Id.* (citing, e.g., Tr. 344, 350, 360). On examination, Dr. Nestler noted Plaintiff did not appear objectively depressed and did not appear to be significantly impacted by depression, and Plaintiff's examination was generally

normal except abnormalities attributed to Plaintiff's limited reading, writing and math skills, not a mental health condition. Tr. 19 (citing Tr. 426-30). Plaintiff argues the evidence is not inconsistent with her allegations, because her impairments are primarily physical, and her depression is linked to her pain. ECF No. 17 at 11-12. However, Plaintiff alleges disability in part due to depression, Tr. 210, and the ALJ reasonably found the objective medical evidence is inconsistent with Plaintiff's allegation of depression being a contributing factor to her inability work.

On this record, the ALJ reasonably concluded that the objective medical evidence is not consistent with Plaintiff's complaints of disabling symptoms. This finding is supported by substantial evidence and was a clear and convincing reason, along with the other reasons offered, to discount Plaintiff's symptoms complaints.

### 2. Conservative Treatment

The ALJ found Plaintiff's conservative treatment was inconsistent with her symptom claims. Tr. 22. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony

regarding the severity of an impairment)); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

The ALJ found Plaintiff's treatment for her physical symptoms has been unremarkably conservative. Tr. 22. Plaintiff has not been offered injections or surgical interventions. *Id.* Plaintiff argues the records indicate she discussed whether an MRI was needed, and Dr. Wheeler found an MRI was not needed because Plaintiff would not consider surgery. ECF No. 17 at 10 (citing Tr. 470). However, the record also indicates Plaintiff "has no findings that would be concerning or warranting MRI at this time." Tr. 469. Plaintiff's physical conditions were treated with Tylenol and physical therapy. Tr. 23 (citing Tr. 432). The ALJ reasonably found Plaintiff's conservative treatment was inconsistent with her symptom claims. This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

*3. Lack of Treatment*

The ALJ found Plaintiff's lack of treatment was inconsistent with her symptom claims. Tr. 21. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn*, 495 F.3d at 638. And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen*, 100 F.3d at 1465.

The ALJ found Plaintiff's lack of mental health treatment was inconsistent with her allegations. Tr. 21. Plaintiff's counsel argues Plaintiff did not seek

mental health treatment because of her cultural-related beliefs. *Id.*, Tr. 38-39. The ALJ found Plaintiff's argument was inconsistent with the lack of any signs of mental health symptoms in the records. Tr. 21. Plaintiff contends her lack of mental health treatment is irrelevant, as her limitations are primarily physical, and notes a reference in her records to Plaintiff being only semi-willing to discuss her mental health. ECF No. 17 at 11-12. However, as discussed *supra,* the records generally reflect Plaintiff's normal mental functioning, and a lack of any mental health treatment. The ALJ reasonably found Plaintiff's lack of mental health treatment was inconsistent with her allegation that depression contributes to her inability to work. This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

**E. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 17 at 2, 7-8, 12-13, 15, 18, 20.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Plaintiff urges this Court to credit her symptom claims, and the opinion evidence as true, and to remand for immediate benefits. ECF No. 17 at 2, 7-8, 12-13, 15, 18, 20. The Court finds the ALJ's rejection of Plaintiff's symptom claims and the opinion evidence was largely supported by substantial evidence for the

reasons discussed *supra*. Plaintiff urges remand for benefits based on Dr. Nestler's improperly rejected opinion that Plaintiff has very limited reading, writing, and math skills. ECF No. 17 at 6-8. However, Dr. Nestler's opinion is not set forth in vocational terms and is not clearly disabling. *See* ECF No. 19 at 6. Further, the ALJ did not take vocational testimony that accounts for Plaintiff's limited reading, writing, and math skills. Thus, additional proceedings are necessary to obtain supplemental vocational expert testimony. The case is remanded for further proceedings consistent with this Order.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

ORDER - 29

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED July 12, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 30